†THE CINCINNATI STREET RAILWAY COMPANY v. MURRAY, ADM R., ET AL.

COLLISION AT A STEAM AND STREET RAILWAY CROSSING—SENDING A MAN AHEAD.

Failure of the steam railway to lower the safety gates does not relieve the street railway company from the duty of sending a man ahead to see if the crossing can be safely made, as required in 88 Ohio Laws, page 581.

ERROR to the court of common pleas of Hamilton county.

·SWING, J.

This case is in this court on error to the judgment of the superior court of Cincinnati, Ohio.

In that court Murray's administrator recovered a judgment against the Cincinnati Street Railway company and the Baltimore and Ohio Southwestern Railway company for the wrongful killing of Murray, in the sum of three thousand dollars. The facts, in brief, are: Murray was a passenger on the street railroad, and at the crossing of Harrison street in Cincinnati, and the Baltimore and Ohio Southwestern Railway company, there was a collision between the street car in which he was riding and the cars of the railroad company, and Murray was killed.

The railroad company had gates at this crossing, and they were not lowered so as to prevent the street cars from passing over, and a watchman stood at the gates. The evidence of the street car company tended to show that the gateman signaled for the cars to pass over, while that of the railroad company was to the effect that the gateman signaled for the street cars not to come. The street car company did not stop the car and did not send an employee ahead to see whether steam cars were approaching and whether it was safe to cross, but relied on the gates of the railroad company being up and the invitation of the gateman to pass over.

There were other facts in the case, but the foregoing facts raise the question presented to us in argument.

The court charged the jury, at the request of the railroad company, p. 21 of charge, as follows:

"The statute of Ohio made it the duty of the Cincinnati Street Railway company to cause the car to come to full stop not nearer than ten feet nor more than fifty feet from the crossing of the Baltimore and Ohio Southwestern Railway company at Brighton, and before proceeding to cross said steam railway tracks, to cause some person in its employ to go ahead of said car and ascertain if the way was clear and free from danger for the passage of said street car, and not to proceed to cross until signaled to do so by such person so employed as aforesaid, or said way was clear for their passage over said tracks; and I charge you that the omission of such duty is negligence upon the part of the defendant which will render it liable in damages if you find that the death of the decedent resulted from such omission or could have been avoided by the observance of this duty."

The question involved in this charge is raised in several different portions of the charge given and in charges requested to be given by the street car company, and refused by the court. The consideration of the question here presented, however, will dispose of all of them.

In our judgment, the view taken by the court was correct.

The law of May 4, 1891, 88 Ohio Laws, p. 581, was passed to "provide for the safety of passengers on street cars." The duty it imposes on the street car company is what the court charged the jury, and it provides that the street car com-

†The judgment in this case was affirmed by the Supreme Court, with report; see opinion, 53 O. S., 570.

pany shall be liable to the passenger in damages for the failure to perform these duties, if the passenger is injured thereby.

But the street car company urges that the law requires steam railroad com panies to erect gates and keep gatemen at certain crossings, and that when the gates are up it is an invitation to persons to cross over; and further, that in this case the evidence tended to show that the gateman signaled for the street car, and therefore the street car company was relieved of the duty imposed by this statute. But we are unable to see the force of this reasoning. The statute makes no ex-ception of this kind, and we think it reasonable if the legislature had intended any such exception, that it would have been incorporated in the law. The legis-lature is presumed to have known of the law in regard to gates and of the deci-sion in the 35 Ohio St., p. 627, and if they had intended such an exception, it would have placed it there, and not left it to the courts to read it into it. Besides, there could hardly be a case which would more clearly show the wisdom of the legisla-ture in providing as it has done, as we regard it, than the present case, for a man's life was sacrificed by not obeying this law.

The testimony of the railroad company tended to show that the gates at the critical moment would not work; that they were attempted to be lowered, and that failing in this the gateman tried to stop the car from crossing by signaling with a gong and hallooing. These signals, the testimony tended to show; were taken by the street car company's servants as signals to pass on. If the street car company had obeyed the plain letter of the law, it is not reasonable to sup-pose that any such mistake would have occurred. The employee would have seen the approaching train, and the street car would not have crossed in the face of the steam cars. To prevent just such an accident as this, it seems to us, is the purpose of the law. The passenger had a right to rely on its observance, and being injured on account of its nonobservance, gives him a right of action against this street car company.

We think the passenger clearly had his right against the street car company for its failure to observe this law if injury resulted therefrom, and the jury found that it did.

The judgment of the superior court of Cincinnati will therefore be affirmed.

*John W. Warrington*, for the Cincinnati Street Railway company.

*Judson Hormon*, for the Baltimore and Ohio Southwestern Railway com-pany.

*Bateman & Harper*, for the Administrator.